# United States District Court

## WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

V.

**MICHAEL WAYNE HESHELMAN**

**ORDER OF DETENTION PENDING TRIAL**

Case Number: 1:06-CR-44

In accordance with the Bail Reform Act, 18 U.S.C. §3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

## Part I - Findings of Fact

☐ (1) The defendant is charged with an offense described in 18 U.S.C. §3142(f)(1) and has been convicted of a (federal offense) (state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is

☐ a crime of violence as defined in 18 U.S.C. §3156(a)(4).

☐ an offense for which the maximum sentence is life imprisonment or death.

☐ an offense for which the maximum term of imprisonment of ten years or more is prescribed in _____

☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. §3142(f)(1)(A)-(C), or comparable state or local offenses.

☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.

☐ (3) A period of not more than five years has elapsed since the (date of conviction) (release of the defendant from imprisonment) for the offense described in finding (1).

☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an)other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternate Findings (A)

☐ (1) There is probable cause to believe that the defendant has committed an offense

☐ for which a maximum term of imprisonment of ten years or more is prescribed in _____

☐ under 18 U.S.C. §924(c).

☐ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternate Findings (B)

☒ (1) There is a serious risk that the defendant will not appear.

☐ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

Defendant is charged in 46 counts of fraud and money laundering arising out of a purported ponzi scheme. The scheme is alleged to have lasted well over 6 years. The various charges carry potential prison terms ranging from 3 to 20 years. Defendant was indicted in this district on February 23, 2006. The indictment was sealed and an arrest warrant was issued.

Defendant's criminal history goes back to 1989 when he was convicted in Florida for passing worthless checks and fraud. It appears that a number of cases were consolidated for purposes of probation, which defendant (continued on attachment)

## Part II - Written Statement of Reasons for Detention

find that the credible testimony and information submitted at the hearing establishes by a preponderance of the evidence that no condition or combination of conditions will assure the presence of the defendant for future court proceedings if he is released. Defendant repeatedly violated his probation while under supervision of a Florida court and finally absconded altogether. A warrant has been outstanding for the past 13 years. It appears the defendant fled to Switzerland in 2003, where he was ultimately located when he was arrested by Swiss authorities for a scheme (continued on attachment)

## Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

Dated: April 6, 2009

/s/ Hugh W. Brenneman, Jr.

*Signature of Judicial Officer*

Hugh W. Brenneman, United States Magistrate Judge

*Name and Title of Judicial Officer*

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. §801 et seq.); (b) Controlled Substances Import and Export Act (21 U.S.C. §951 et seq.); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. §955a).

United States v. Michael Wayne Heshelman
1:06-CR-44
**ORDER OF DETENTION PENDING TRIAL**
Page 2.

**Alternate Findings (B) - (continued)**

repeatedly violated (in July 1990, October 1993, September 1994, May 1995, November 1995). Defendant eventually absconded from probation altogether in February 1996. It appears from his sister's testimony defendant came to Michigan about this time. An arrest warrant was issued in Sarasota County, FL, and has remained outstanding for a period of 13 years. Defendant has used a number aliases which are close spellings of his own name, occasionally inserting an "r" in his name and/or eliminating the last syllable of his name.

It appears defendant fled to Switzerland in 2003. While in Switzerland, the defendant was in contact with his sister, and on at least one occasion, with the FBI, by cell telephone. He did not tell either of them where he was living, other than to say it was in Zurich. In a telephonic statement to the FBI, in November 2006, the defendant stated to them, "if I tell you where I am living, you will come and arrest me." In December 2008 defendant was arrested in Switzerland by Swiss authorities on a fraud charge in that country. Defendant was detained by the Swiss authorities beginning December 16, 2008.

The arrest by Swiss authorities led American authorities to extradite the defendant on the present indictment. The American government requested extradition on February 2, 2009. A Special Agent of the FBI testified that it was his understanding that a hearing was held, and on February 27, 2009, the Federal Office of Justice in Switzerland granted extradition. Defendant did not waive extradition. In a letter to the U.S. Ambassador to Switzerland, defendant complained that the extradition warrant against him was issued under an expired passport. Through his attorney, he apparently now claims that he fought extradition so that he would have the opportunity to remain in Switzerland and face the Swiss charges. This representation is less than convincing in light of the fact that the Swiss authorities dropped their charges against him at about the same time he chose not to appeal the extradition order.

Should defendant be released and escape abroad again, he has, by his own admission, huge financial resources available to him. This finding is based upon the following:

1) When defendant first appeared in court, he told the court he had significant resources in Switzerland which he could access in a matter of days;

2) While in detention in Switzerland, defendant wrote to the U.S. Ambassador in Switzerland stating that he had a plan to jump-start the U.S. car industry, that he thought he knew who had some of Madoff's money, and that "my company" had five hundred million Euros deposited with the UBS;

United States v. Michael Wayne Heshelman
1:06-CR-44
**ORDER OF DETENTION PENDING TRIAL**
Page 3.

3) In another letter to the Ambassador, he stated he had funding for the European community for an oil refinery in the Balkan states. He stated he had been able to produce 500 million Euros to fund projects. As part of a solution he proposed for the American economic problem, he stated that there needs to be "toxic banks" to buy the bad debts outstanding. Then he adds "my group can do this. I know where 10 B in cash is that can be moved with ease!";

4) Regarding the June election in Iran, defendant stated he "can help facilitate money for the campaign against Amadedisan [sic] – seriously – ";

5) Defendant told Pretrial Services he possessed $674,854,906.00 in U.S. currency in a trust in Switzerland under the business name Investors First Limited; and

6) On his financial affidavit, defendant reported he has $80,000 U.S. in cash or in bank accounts. He also said that in a corporate account in Switzerland, not personal, he has "$200,000 U.S. in Prime Investments, $300,000 Euros – Antonio Piola, and $500,000,000 Euros – Tenant Inc."

Defendant's sister, Brenda Moore, testified that the defendant could live with her and her husband in Battle Creek, and that they would put up their house to secure his presence in court, and that she would turn her brother in if he were about to flee. The latter is doubtful.

The testimony of the sister was troubling at best. She testified emphatically that she has known nothing about her brother's business, despite being a signatory on one of his accounts, and that the entire time he was in Switzerland she never had an address for him, although she could reach him on a cell phone. Although she sent him at least one Christmas gift, she couldn't recall how this was done.

On June 21, 1999, Moore and her husband bought a home at 451 Bowdoin Circle, Sarasota, FL, for approximately $250,000 according to Moore's testimony. Since they have never lived in Florida, this was essentially rental property. Defendant had also lived at this address. On August 27, 2003, the Moores gave a warranty deed for the house to the defendant for the nominal sum of $10.00 for the purpose of him selling the house for them. The defendant paid them no money for the house. Moore testified she and her husband had taxes up north to take care of and selling the home in Florida would be one less financial obligation for them. Then, on October 19, 2004, the defendant sold the home to Amilcar and Olga Monzon. According to the records of the Sarasota County Property Appraiser's Office, the amount of the sale was $1,000,000. Mrs. Moore, who according to her testimony should have received this money (less $250,000 if the house were mortgaged) knew nothing about this amount and recalls nothing about the transaction, other than that a sale took place.

United States v. Michael Wayne Heshelman
1:06-CR-44
**ORDER OF DETENTION PENDING TRIAL**
Page 4.


She testified she did not know if she received the proceeds of the sale, and that she did not think they received "a whole lot of money" for the house.

This testimony borders on the incredible, since the sale was for four times the purchase price and represented a profit of at least $750,000, of which Moore appears entirely ignorant. One could reasonably conclude that the defendant either kept the money he should have paid to his sister, thereby defrauding her, or that the property really didn't belong to her in the first place but was simply in her name as a nominee for the defendant.

It also appears defendant must have returned from Switzerland to personally appear before the notary in Miami-Dad County in Florida on the October 19, 2004 deed.


**Part II – Written Statement of Reasons for Detention**

in that country. He was subsequently extradited to the United States, not having waived extradition. If defendant is to be believed, he has tremendous financial resources at his disposal in Switzerland, and at age 60 could live his remaining years comfortably in any number of third world countries rather than in a federal prison. (If defendant is not to be believed about his money, then the court, if it put him on bond, would be relying upon the word of a defendant who is perpetuating a fraud upon the court, or is delusional.) The grand jury indictment establishes by probable cause that defendant has a track record of convincing people to put their faith and trust in him to their detriment, and it appears he is asking the court to do the same thing. Nor can the court be comforted by the fact that he could live with his sister, whose testimony readily demonstrates that her first loyalty is to her brother whose conduct she knows either nothing about or is willing to overlook and excuse.