UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

MICHAEL WAYNE HESHELMAN, et al.,

       Defendants.
_____/

Case No. 1:06-cr-44

HON. JANET T. NEFF

## **OPINION**

Defendants Michael Wayne Heshelman and Bryce Henry Sherwood are charged in a 53-count Indictment alleging various counts of conspiracy, wire fraud, money laundering, and international money laundering, stemming from an alleged fraudulent investment scheme that defrauded investors of millions of dollars from 1999 to 2006.[1] Defendants have moved to dismiss the Indictment on the grounds that a nearly three-year delay between the filing of the Indictment and the issuance of the arrest warrants violated defendants' Sixth Amendment right to a speedy trial. The Court granted the government's motion for an expedited hearing. Having heard testimony and thorough argument from counsel, the Court concludes that although this is a close call, under the factors of *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Indictment is not properly dismissed. Defendants' motion is therefore denied.

---

[1] A third defendant charged in the Indictment, Dennis R. Mickelson, entered a guilty plea on May 19, 2009 and is not involved in the motion before the Court.

I.  Background

This case involves an alleged Ponzi scheme, in which one or more of the defendants would claim to be a successful investment and financial advisor with access to secret investment opportunities not available to the general public (Govt. Ex. 2, Daniel Y. Mekaru Aff. in Supp. of Extradition ¶ 4).  According to the government, Heshelman and others falsely represented to investors that their investments would be safely invested (*id.*).  To the contrary, defendants used investors' money for personal benefit and, in a classic Ponzi scheme, they used subsequent investor money to pay promised investment returns to earlier investors (*id.*).

Defendants allegedly operated the investment scheme from July 2, 1999 until at least February 23, 2006, although the substantive offenses covered by the Indictment all occurred in March 2001 (Govt. Br. 15; Govt. Ex. 2, Mekaru Aff. ¶ 4).  The Indictment was filed in this case on February 23, 2006 but remained sealed until December 12, 2008, in order that the execution of the arrest warrants be unimpeded and the investigation continue (*see* Dkt 2).  It was only after the government decided to seek the extradition of Heshelman from Switzerland that the case was unsealed (*see* Dkt 7).

The Indictment charges defendants with one count of conspiracy to commit wire fraud, 18 U.S.C. § 371; twenty-six counts of wire fraud, 18 U.S.C. § 1343; one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h); six counts of money laundering, 18 U.S.C. § 1956(a)(1)(A)(i); four counts of international money laundering, 18 U.S.C. § 1956(a)(2)(A); eight counts of money laundering (against Heshelman), 18 U.S.C. § 1957; five counts of money

laundering (against Sherwood), 18 U.S.C. § 1957;[2] and one count involving forfeiture allegations (Count 53).

Sherwood filed a motion to dismiss the Indictment (Dkts 51, 54) for speedy trial violations based on the nearly three-year delay in unsealing the Indictment (Def. Br. 6).  Heshelman has joined in the motion (Dkts 54, 59).  The government filed a Response (Dkt 57) to the motion to dismiss and also filed a Motion for Expedited Hearing (Dkt 58).  The Court conducted a hearing on the Motion to Dismiss on May 15, 2009 and heard testimony from FBI special agent Timothy Wetherbee, who was the lead agent in the investigation of this case.

## II.  Issue

The issue, as framed by defendants, is:  Whether dismissal of the Indictment is warranted based on speedy trial violations because of the nearly three-year delay between the filing of the sealed Indictment on February 23, 2006 and the unsealing of the Indictment on December 12, 2008, and because the alleged acts and occurrences took place approximately ten years ago, from July of 1999 through and including March 14, 2001?

## III.  Analysis

To establish a violation of the Sixth Amendment right to a speedy trial, on balance, four factors must weigh in the defendant's favor:  (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant as a result of the delay.  *Barker*, 407 U.S. at 530.  The courts should approach speedy trial cases on an ad hoc basis to determine whether a particular defendant has been deprived of his right to speedy trial.

---

[2] One count of money laundering is also alleged against Mickelson.

*Barker, supra.* None of the four factors is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. *Id.* at 533.

Here, on balance, the *Barker* factors do not weigh in favor of defendants. Although the delay is significant in this case, much of the delay was warranted given the nature and circumstances of this case, and moreover, defendants have not shown substantial prejudice from the delay. The factors, and the Court's considerations, are as follows.

(1) *Length of the Delay*

This factor involves a two-part inquiry. First, the court considers whether the delay is sufficient to trigger a speedy trial analysis, i.e., "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States,* 505 U.S. 647, 651-52 (1992) (quoting *Barker,* 407 U.S. at 530-31). If so, then the court considers this factor as one among several, for "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652. "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.*

In general, a delay of one-year is presumptively prejudicial, depending on the nature and seriousness of the charges. *Doggett,* 505 U.S. at 652 n.1. Here, it is undisputed that the delay of nearly three years is presumptively prejudicial. The Indictment remained sealed for 33 months. Sherwood states that it was approximately 36 months from indictment to the setting of his initial appearance (Def. Br. 2). The government states the delay was approximately 34 months from indictment to arrest (Govt. Br. 6). A delay that is presumptively prejudicial triggers consideration of the remaining three factors in *Barker*, along with further consideration of the length of the delay in the context of prejudice. *Doggett,* 505 U.S. at 652.

4

(2) *Reason for the Delay*

The burden is on the prosecution to explain the cause of pre-trial delay. *United States v. Brown,* 169 F.3d 344, 349 (6th Cir. 1999). "When the delay is lengthy and attributable to bad faith by the government, no showing of prejudice is required. However, when the government has used reasonable diligence to pursue a defendant, the defendant must show that the delay caused 'actual prejudice' to his defense." *Id.* at 350. Although defense counsel, in argument, briefly alluded to "bad faith" on the part of the government, the Court finds no circumstances supporting such a finding. Thus, the key issue here is whether the government exercised reasonable diligence or was negligent.

With respect to Heshelman, the Court finds the reasons for the delay justifiable on the whole. This case involves a multi-count indictment charging defendants with an international conspiracy to defraud. The Court heard extensive testimony concerning the government's reasons for delay, which centered primarily on the difficulties in apprehending Heshelman, the complex nature of the financial conspiracy charges, and the government's reluctance to move forward with the charges in the absence of Heshelman.

It is undisputed that beginning in at least 2003, Heshelman began living in Switzerland. After the Indictment was filed, he never voluntarily returned to the United States. There is ample evidence that the extradition process is complicated and cumbersome. Because of the risks in attempting apprehension in a foreign country and, specifically, in seeking extradition from Switzerland, the government bided time in the hope that Heshelman would voluntarily return to the United States, where he maintained family and business contacts, and could simply be arrested. Heshelman did not return to the United States, although in November 2006, he made telephone

5

contact with special agent Wetherbee concerning the investigation of this case, which Heshelman complained was impeding his business dealings. There is evidence that Heshelman declined to give his location or contact information to agent Wetherbee. Agent Wetherbee also testified at length concerning the stringent legal and procedural restrictions that precluded him from pursuing any direct investigation of Helshelman in Switzerland.

The delay with respect to Heshelman was in large part attributable to defendant himself. A defendant who intentionally evades prosecution is responsible for the delay and cannot claim prejudice resulting from such delay; however, the government must exercise reasonable diligence in attempting to locate and notify a defendant of the indictment against him. *Brown,* 169 F.3d at 349-50. Heshelman remained in Switzerland, purposefully avoiding the charges despite his knowledge of the investigation. To the extent the delay can be attributed to the government, the delay was explainable as a result of the complex nature of the charges and the underlying fraudulent investment scheme; the difficulty in investigating and preparing the case; and the difficulties in pursuing extradition. *See, e.g., United States v Blanco,* 861 F.2d 773, 778-79 (2d Cir. 1988) (discussing limitations on the government's obligation to seek extradition and its authority to attempt to apprehend a defendant in a foreign country).

With respect to Sherwood, the considerations are somewhat different. The delay in bringing forth charges against Sherwood stemmed mostly from Heshelman's residency in Switzerland and the government's inability to secure the appearance of codefendant Heshelman and prosecute the case as a whole. While this delay is not directly attributable to Sherwood and the government's claim of diligence is not absolute, the government had a legitimate basis for the delay given the conspiracy charges and the circumstances surrounding Heselman. *See United States v. Davenport,*

935 F.2d 1223, 1240 (11th Cir. 1991) ("delay in this case must be balanced against the importance of conducting joint trials in conspiracy cases, which offsets to some extent the government's level of culpability").

Once Heshelman was in custody, the government unsealed the Indictment and advised Sherwood of the warrant for his arrest. Any delay thereafter in Sherwood's appearance was minimal. Thus, this factor is neutral with respect to Sherwood.

(3) *Defendants' Assertion of Right to a Speedy Trial*

There is no dispute that Sherwood and Heshelman have expressly filed a speedy trial claim.

(4) *Prejudice to Defendants as a Result of the Delay*

In balancing this factor, the Sixth Circuit requires a defendant to show "substantial prejudice" as a result of the delay. *United States v. White,* 985 F.2d 271, 276 (6th Cir. 1993). But, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett,* 505 U.S. at 655. Extraordinarily long delay gives further weight to the presumption of prejudice, but this presumption can be rebutted by the government to preserve the charges. *Brown,* 169 F.3d at 351.

This factor essentially involves the application of a sliding scale. "The amount of prejudice that the defendant must show depends on the reasons for the delay." *Brown,* 169 F.3d at 351. "When the delay is lengthy and attributable to bad faith by the government, no showing of prejudice is required." *Id.* at 350. However, "'[i]f the government has been diligent in its pursuit of a defendant and delay was 'inevitable and wholly justifiable,' a speedy trial claim will generally fail.'" *Id.* at 351 (quoting *United States v. Mundt,* 29 F.3d 233, 236 (6th Cir.1994) (citation omitted)).

"Finally, when the government's negligence caused the delay, the need to prove prejudice diminishes as the delay increases." *Brown,* 169 F.3d at 350-51.

While the delay in this case was lengthy, there is no demonstration that the delay was attributable to bad faith on the part of the government. But neither has the three-year delay been shown to be absolutely justified. This case lies somewhere in the middle ground in assessing responsibility for the delay. Thus, while the three-year delay gives further weight to the presumption of prejudice, the court must consider the nature and the extent of the prejudice:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker,* 407 U.S. at 532 (footnote omitted).

Defendants' claim of prejudice focuses specifically on the impairment of their defense. The "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett,* 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532). Yet, this type of prejudice is "'the most serious … because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* at 654 (quoting *Barker*, 407 U.S. at 532).

Defendants argue that they have been severely prejudiced by the delay. They contend that the delay in unsealing the Indictment gives the government a significant tactical advantage in this case while the defense must now begin an investigation into alleged activities that took place some ten years ago. Defendants must attempt to locate witnesses and evidence necessary to put forth a defense.

In his motion, Sherwood argues that he "may not be able to assemble documents that are the focal point and will require financial institutions from ten (10) years ago to reconstruct and deliver to defend this case" (Def. Br. 11). Further, the disputed transactions were handled not by defendant, but by a "non-indicted attorney" from Florida, which "is problematic at best" (*id.*). Also, the government plans to call witnesses from around the country; however, defendant is prejudiced in that the actual bank employees may not be able to be found and located (*id.*). Finally, the ten-year delay makes investigating and finding witnesses expensive and time consuming, and makes actual prejudice harder to demonstrate (*id.*). Heshelman joins in Sherwood's arguments.

Defendants' claims of prejudice are well-founded from a general standpoint, but the Court finds countervailing circumstances in this case that mitigate these claims of prejudice. First, as the government points out, defendants cite primarily potential prejudice rather than actual prejudice. Second, the government has, to a large extent, rebutted the claims of prejudice based on the specifics of this case—the nature of the charges and the evidence. And third, of particular importance in the Court's view, is that defendants should not be absolved of their own responsibility for prejudice from the lack of exculpatory evidence since they were aware of the government's investigation of their business dealings and could have maintained records necessary to their defense. These points are elaborated briefly as follows.

First, defendants clearly demonstrate a potential for prejudice, but no significant actual prejudice. In their written briefs, and at the hearing on the motion, defense counsel repeatedly emphasized that witnesses *may not be able to be located* and that the passage of ten years time *could present difficulties* retrieving evidence. While a showing of actual prejudice is not essential, it would lend both substance and weight to defendants' claims of prejudice. Further, to the extent

9

defendants have demonstrated actual prejudice, these circumstances are largely of their own making as discussed subsequently.

Second, as the government points out, the charges in this case stem from alleged fraudulent financial investment transactions over a limited time period. Thus, defendants' stated difficulties in locating witnesses and evidence is somewhat circumscribed. The government offers specific responses to defendants' claims of prejudice as follows.

**(1) Ten-year-old allegations**: Although the Indictment alleges activity from 1999 through 2006, the substantive offenses were all in March 2001. The Indictment is centered on fraudulent representations made to Alan Moody. Defendants have been provided with numerous recordings of their conversations with Mr. Moody and their representations to him, which the government claims will be shown to be false by bank records.

**(2) Ten-year-old documents:** The majority of the banking records and supporting documents will be from 2001, although some that support the claims of investments will date back to 1999. All of the records to support the transactions were provided in discovery. While defendants claim difficulty in assembling these documents and transactions, they have not requested an adjournment for that purpose.

**(3) Non-indicted attorney:** Defendants do not explain how they are prejudiced by a "non-indicted attorney" from Florida.

**(4) Bank witnesses:** The financial institution witnesses are primarily custodian witnesses, and the bank records will generally speak for themselves. Testimony by bank employees is unlikely to be critical to the defense.

**(5) Time and expense in locating witnesses:** Defendants claim prejudice from the time and expense in locating witnesses, but have not moved for an adjournment for more time to prepare.

**(6) Actual prejudice more difficult to demonstrate:** Although the passage of time may prejudice the defense of certain prosecutions, such as a murder case dependent on eyewitness testimony, that is not the nature of this case. This is a classic Ponzi scheme. The heart of the government's case depends on representations made to Alan Moody. Because many of defendants' representations were recorded on tape, the quality, nature, and weight of the evidence does not degrade like memory.

The government's contentions sufficiently rebut defendants' specific claims of prejudice.

Finally, and of particular importance to the Court in balancing the factors in this case, much of the prejudice claimed is of defendants' own making. Defendants complain that they are faced with defending a case that is more than ten years old. At the hearing on the motion, Sherwood argued that business contacts and investment products that he put together from 1999 to 2001 and witnesses from that time frame would benefit his defense immensely, but are likely unavailable. He stated that he has moved four times and has lost some documents, and has actually moved since the agent last spoke with him in 2005.

Likewise, Heshelman complains that he lacks business records to defend himself in this case. He states that he has no documents relating to the time frame at issue. He indicates that some papers may have been lost in Switzerland. Further, he has a case investigator working on his behalf, and although a few people have been found who could be potential witnesses, many witnesses, including government witnesses, may be difficult to find.

The Court does not lightly dispense with defendants' complaints of lack of evidence and witnesses. However, defendants admitted having knowledge of the investigation of this case long ago. Heshelman telephoned FBI agent Wetherbee on November 16, 2006, asking about the status of the investigation and declined to give his address on the ground that he might be arrested. Defense counsel acknowledged in his cross-examination of agent Wethersbee that Sherwood had a face-to-face meeting with Wethersbee sometime in 2005 concerning the allegations in the Indictment and that Sherwood knew that there was a criminal investigation involving money laundering or fraud. Given defendants' knowledge of the investigation, their complaints that they have lost their business records are entitled to less weight in the calculus of prejudice.

Defendants also assert that the government, particularly in the case of Sherwood, knew his whereabouts, but did nothing to advance the prosecution. However, this argument also weighs against defendants since they knew they were under investigation, and apparently chose not to come forward to resolve the investigation, and did not undertake efforts to preserve business records and or other potentially exculpatory evidence.

The delay in this case was unquestionably extensive. But the counterbalancing factors outweigh the prejudice that results. *See Barker,* 407 U.S. at 534. Defendants have not shown serious prejudice beyond the ordinary difficulties posed by the passage of time. *See id.*

The Supreme Court has recognized that the amount of delay found acceptable is necessarily dependant on the nature of the case: "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. In argument on the motion, the government aptly pointed out that the ten-year statute of limitations for bank fraud and other related offenses is an implicit recognition by Congress that

financial investigations and financial crimes are of such a nature that they require a lengthy amount of time to investigate and to properly prosecute. "The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations." *United States v. MacDonald,* 456 U.S. 1, 8 (1982).

Here, the Court acknowledges that the delay at issue approaches the outer bounds of those tolerable in balancing the fundamental rights of the accused against the government's charge to effect justice for the good of society. But merely approaching those bounds does not warrant the harsh remedy of dismissal as when the government exceeds those bounds.

## IV. Conclusion

The government's conduct in this case was, at most, negligent with respect to the delay, but the government did not act in bad faith. On balance, the factors cannot be said to weigh heavily against the government, particularly with respect to Heshelman. Any prejudice suffered in this case is minimized because of the nature of the charges and evidence. The defense cites primarily presumed or potential prejudice, but the government has largely rebutted that prejudice. Properly balanced, the factors in *Barker* require that defendants' Motion to Dismiss the Indictment be denied.

An Order consistent with this Opinion will be entered.


DATED: May 20, 2009                    /s/ Janet T. Neff
                                       JANET T. NEFF
                                       United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                 Case No. 1:06-cr-44

v.                                                    HON. JANET T. NEFF

MICHAEL WAYNE HESHELMAN, et al.,

       Defendants.
_____/

## **ORDER**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss the Indictment (Dkts 51, 54) are DENIED.

DATED: May 20, 2009                          /s/ Janet T. Neff
                                                            JANET T. NEFF
                                                            United States District Judge