UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                            Case No. 1:06-cr-44

v.                                          HON. JANET T. NEFF

MICHAEL WAYNE HESHELMAN,

       Defendant.
_____/

## SENTENCING MEMORANDUM

After a seven day jury trial, defendant was convicted of 46 counts of criminal conduct arising from a Ponzi scheme of which he was the principal actor. Two co-conspirators who both pled guilty to the same scheme testified against defendant. At the time of sentencing defendant was 60 years old and complained of numerous health problems. This Court nevertheless sentenced him to 204 months' imprisonment,[1] a term within the advisory guidelines range of 188-235 months as scored by the probation officer and the Court. Because of extensive argument resulting from defendant's objections to the scoring of the guidelines the Court now issues this memorandum in conjunction with the written judgment of sentence to provide greater detail regarding the reasons given for the sentence imposed.

---

[1] The Court sentenced defendant on Counts 1-27: Wire Fraud, 18 U.S.C. §§ 371, 1343, 60 months; Counts 28-38: Money Laundering, 18 U.S.C. § 1956(a)(1)(A)(i), (a)(2)(A), and (h), 204 months; Counts 39-46: Money Laundering, 18 U.S.C. § 1957, 120 months. All sentences run concurrently.

I

The wire fraud counts (1-27) were count Group A where the Adjusted Offense Level (OL) (Subtotal) was 32, determined as follows:

| | | |
|---|---|---|
| Base OL | § 2B1.1(a) | 6 |
| Specific Offense Characteristic | § 2B1.1(b)(1)(K) | 20 |
| Sophisticated Means | § 2B1.1(b)(9)(B) & (C) | 2 |
| Role in Offense | § 3B1.1(a) | 4 |
| | Subtotal | 32 |

The money laundering counts (28-46) were count Group B where the Adjusted Offense Level (Subtotal) was 36, determined as follows:

| | | |
|---|---|---|
| Base OL | § 2S1.1(a)(1) | 28 |
| Specific Offense Characteristic | § 2S1.1(b)(2)(B) | 2 |
| Sophisticated Means | § 2S1.1(b)(3) | 2 |
| Role in Offense | § 3B1.1(a) | 4 |
| | Subtotal | 36 |

The combined Adjusted Offense Level is 36, defendant's Criminal History Category is I, yielding an Advisory Guidelines Range of 188-235 months.

II

The first objection related to the scoring of the wire fraud counts and dealt with the two offense level enhancement under U.S. SENTENCING GUIDELINES (U.S.S.G.) MANUAL § 2B1.1(b)(9)(B) and (C) for commission of the offense outside the United States or use of sophisticated means. The specific language of the guideline reads: "(B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by **2** levels." U.S.S.G. § 2B1.1(b)(9)(B) and (C)

Here, defendant lived in London, England and Zurich, Switzerland during part of the time he was engaged in carrying out the scheme to defraud and investors were told that he was operating outside the United States in his attempts to secure investment opportunities not otherwise available to ordinary investors. He was often difficult to contact because of his location numerous time zones away from his victims.[2] Money was moved through his attorney's trust account via wire transfers to locations abroad.

Application Note 8 (B) of Sentencing Guideline § 2B1.1 explains that "sophisticated means" includes "intricate offense conduct" intended to conceal the offense. The facts as established through numerous witnesses at trial, including testimony of the co-conspirators, showed an extensive effort to conceal this offense from the victims through various falsehoods. Defendant's credentials as an investment advisor were misrepresented as was his special access to investment opportunities, and victims were told that their funds were safe from risk in defendant's attorney's

---

[2]Curiously, counsel argued at sentencing that because defendant did return some phone calls from victims, he should be entitled to some consideration or credit for keeping in touch with them, even though his conversations were nothing more than a continuation of the false representations made to string them along with promises that deals were close to fruition, that within days great returns would be realized, none of which was true.

trust account where it would remain and could not be disbursed without their knowledge and approval. These efforts alone to conceal the offense make clear that the two offense level enhancement under Sentencing Guideline § 2B1.1(b)(9) was appropriately applied.

Defendant makes a similar argument concerning the two offense level enhancement applied to the money laundering counts under Sentencing Guideline § 2S1.1(b)(3) for sophisticated laundering, and for similar reasons the objection is rejected. There were extensive efforts to conceal the offense, multiple layers employed as money was moved through defendant's attorney's trust account to accounts abroad as well as domestically to the co-conspirators (see Application Note 5(A) to U.S.S.G. § 2S1.1) and international banking was used including different business accounts.

III

Defendant argued that the four offense level enhancement of Sentencing Guideline § 3B1.1(a) for his role in the offense was unwarranted because he was not a leader or organizer, and there were not five or more people involved in the scheme, which was not otherwise extensive.

That defendant was a leader in this scheme is shown by the single factor that he alone controlled the flow of money. All the money flowed through defendant's attorney's trust account and was paid out at defendant's direction. Moreover, defendant received far more of the proceeds of the fraud than any other participant.

There were five or more participants: defendant, the two co-conspirators who pled guilty and testified against defendant, defendant's attorney,[3] a man in California (Featherstone) who was employed for the sole purpose of placating and providing a false sense of security to questioning

---

[3]It is not clear if the attorney was a knowing participant. However, for purposes of scoring this guideline, his role in providing unknowing services can be considered in determining that the scheme was extensive.

4

investors,[4] and another man (DeTour) who recruited investors and was paid a finder's fee for his services.

IV

Defendant's final scoring objection related to the amount of actual loss under Sentencing Guideline § 2B1.1(b)(1) which was scored under subsection (K), more than $7,000,000. He claims he is entitled to credit for money or property returned to one victim, Rev. Alan Moody. This Court disagrees.

The actual loss was calculated to be $7,000,400. If defendant's argument prevails on either item claimed, the scoring would be reduced by two offense levels.[5]

Rev. Moody and his wife were seeking to invest monies to fund a charitable foundation, the source of which was the settlement of a wrongful death case in which six of Mrs. Moody's siblings were killed and other family members injured. The Moodys invested $2,500,000 in defendant's scheme.

Rev. Moody became suspicious of the motives/methods of the investment when none of the promised returns were realized and his efforts to get his money back were met with vague promises. To placate the Moodys, the co-conspirators purchased a bus with monies deposited by the Moodys. The false representation was made that the bus was purchased as a charitable donation to the

---

[4]This participant was ill at the time of trial, but his ex-wife testified to his role in the offense. She testified that her ex-husband worked for defendant and to the nature of his participation in the scheme.

[5]Note that by stipulation of the parties an order of forfeiture in the amount of $8,000,000 was entered prior to sentencing.

Moody's church, where Rev. Moody was youth pastor. No disclosure of the source of the funds was made and the bus was titled to the church.

The Moodys also pursued return of their money from one of the co-conspirators who gave them a mortgage on his home. This was a long, arduous process because of the layers of falsehoods employed to placate them, but it was finally successful, although to what degree was never firmly established.

As noted, any return the Moodys were successful in obtaining was after detection of the offense. Application Note 3(E) of Sentencing Guideline § 2B1.1 provides that the loss from fraud offenses such as the present one shall be reduced by:

> (i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

Clearly the credit provision does not apply on these facts. In the first instance, the Moodys did not get anything from the purchase of the bus, that asset went to the church. More to the point, the bus was purchased as a way to divert the Moodys' suspicions when the defendant knew or suspected that the scheme was detected or about to be detected. The foreclosure on the co-conspirator's house came well after the Moodys had detected the offense.

If defendant's argument prevails and he is entitled to a credit under Sentencing Guideline § 2B1.1 and the two offense level reduction, the adjusted offense level would be based on Offense Level 34 and Criminal History Category I which yields a range of 151-188 months. In such event,

this Court would grant the government's motion for an upward variance because of the very high risk of recidivism posed by defendant.[6]

At sentencing, defendant's allocution provided ample evidence of his propensity for fraud. He insisted that in spite of the fact that $8,000,000 has disappeared with absolutely no indication of where it went, he had no intention to defraud anyone. He stubbornly claimed that he has access to $100,000,000 worth of Chinese bonds, when testimony at trial established that this is an old, but enduring scam. He also tellingly claimed that had he intended to defraud, he could have stolen and hidden the entire $8,000,000 without detection. All of which convinces this Court that even at age 60, defendant has not shown any insight into his crime and may well re-offend absent a lengthy prison term, which would have supported a variance above 188 months to the level imposed of 204 months to reach a sentence sufficient but not greater than necessary to comply with the statutory factors of § 3553(a), particularly to afford adequate deterrence and to protect the public from further crimes of the defendant.

Accordingly, for the reasons stated above and on the record on December 17, 2009, the Court determines that a total term of imprisonment of 204 months is sufficient, but not greater than necessary, to serve the purposes of sentencing as delineated in § 3553(a)(2). Defendant is ordered to pay a special assessment of $4,600, and restitution in the amount of $7,000,400. Other conditions are set forth in the judgment of sentence.

---

[6] 18 U.S.C. § 3553(a), History and Characteristics of defendant.

V

The Guidelines scoring in this case is fully supported by the text of the Sentencing Guideline, the applicable Commentary and Application Notes, and the testimony and evidence introduced at trial.


DATED: January 6, 2010                              /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge